IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES

v.                                                    CRIMINAL NO. 1:21-cr-39-TBM-RHWR
                                                      CIVIL ACTION NO. 1:23-cv-204-TBM
LEONARD CHARLES THOMAS, JR.

## ORDER

Leonard Thomas, Jr. filed a Motion [42] to Reduce his Sentence under the First Step Act, and a Motion [49] to Vacate under 28 U.S.C. § 2255. Thomas pleaded guilty to possession with intent to distribute 50 grams or more of methamphetamine. Thomas has numerous prior criminal convictions and he found himself in the highest criminal category. Ultimately, he was sentenced to 152 months of imprisonment. Thomas first asks the Court to vacate his sentence because of alleged extraordinary and compelling reasons. Thomas also asks to vacate his sentence based on alleged ineffective assistance of counsel. Because the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," no evidentiary hearing is warranted and Thomas's Motion [42] to Reduce his Sentence and his Motion [49] to Vacate are DENIED. 28 U.S.C. § 2255(b).

## I. BACKGROUND AND PROCEDURAL HISTORY

In October 2020, Leonard Thomas, Jr. knowingly and intentionally possessed with the intent to distribute 50 grams or more of methamphetamine. Thomas was indicted on March 30, 2021, and charged with a single count in violation of 21 U.S.C. § 841(a)(1). On July 21, 2021, Thomas pleaded guilty pursuant to a plea agreement and plea supplement. Thomas also acknowledged the maximum penalty of life in prison that he might receive because of the guilty plea. [35], p. 18. As part of his plea agreement, Thomas expressly waived his right to appeal his

conviction and his right to file for post-conviction relief, but Thomas reserved the right to raise ineffective assistance of counsel claims. Thomas was sentenced on October 28, 2021, and was committed to the custody of the Bureau of Prisons for a term of 152 months, to be served consecutive to another sentence, and he was also sentenced to five years of supervised release. [36], p. 34. His projected release date is November 6, 2033.[1]

Thomas appealed his conviction to the Fifth Circuit, and the appeal was dismissed as frivolous on April 29, 2022. [39]. Thomas then filed his Motion to Reduce Sentence pursuant to the First Step Act on May 12, 2023. Subsequently, on August 16, 2023, Thomas filed his Motion to Vacate under Section 2255. Under Section 2255(f)(1), Thomas had until April 29, 2023, to file a motion to vacate but his Motion [49] was not filed until August 16, 2023, over three months past the limitations period. Accordingly, the Court finds that Thomas's Motion to Vacate was not timely filed. 28 U.S.C. § 2255(f)(4) ("The limitation period shall run from . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."); *United States v. Duran*, 934 F.3d 407, 414 (5th Cir. 2019). Still alternatively, and out of an abundance of caution, since the Motion is based on claims of ineffective assistance of counsel, the Court will analyze it below.

## II. DISCUSSION

Thomas has filed two Motions: (1) a Motion to Reduce his Sentence under the First Step Act, and (2) a Motion to Vacate pursuant to 28 U.S.C. § 2255(b). The Court will address each Motion in turn.

---

[1] https://www.bop.gov/inmateloc/ (last visited December 13, 2024).

**A. Motion to Reduce Sentence under the First Step Act pursuant to 18 U.S.C. § 3582(c)(2)**

"As a general rule, federal courts 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). But that general rule is subject to a few exceptions, including a motion for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Prior to the passage of the First Step Act of 2018, such motions could be presented to a court only upon a request by the warden of the defendant's facility. But now a prisoner may move for reduction in sentence "on their own accord." *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021).

Congress has dictated that a prisoner seeking a reduction in sentence must prove that (1) an "extraordinary and compelling reason" justifies the sentence reduction; (2) the relief sought is consistent with the Sentencing Commission's applicable policy statements; and (3) the 18 U.S.C. § 3553(a) sentencing factors weigh in favor of the requested relief. 18 U.S.C. § 3582(c)(1)(A). In 2023, the Sentencing Commission amended its policy statement to cover motions for sentence reduction filed by defendants and to expand the list of extraordinary and compelling reasons sufficient to support such a motion under § 3582(c)(1)(A). U.S.S.G. § 1B1.13. The amendments became effective on November 1, 2023, and "supersede much of the case law that developed over the past several years while there was no applicable policy statement." *United States of America v. Campbell*, No. 1:12-cr-439-CCE, 2023 WL 7220732, at *2 (M.D. N.C. Nov. 2, 2023). Accordingly, the Court considers the guidance from the amended guidelines.

**i. Extraordinary and compelling reasons**

The amendments to the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13, provide six extraordinary and compelling reasons that may justify reducing a prison term: (1) medical conditions of the defendant, (2) age of the defendant, (3) family circumstances of the

defendant, (4) victim of abuse, (5) other reasons, or (6) unusually long sentence. U.S.S.G. § 1B1.13. Here, Thomas does not specifically invoke any of these extraordinary and compelling reasons as the basis of his Motion.

Instead, Thomas relies on 18 U.S.C. § 3582(c)(2), which states that a court may not modify a term of imprisonment once it has been imposed except "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." Thomas contends that he has "extraordinary and compelling reasons" to reduce his sentence under this statute but has provided no evidence that the Sentencing Commission has lowered the sentencing range for the charge his sentence was based on. Instead, he asks this Court to consider a reduction based on the distinction between "methamphetamine actual" and "methamphetamine mixture." U.S.S.G. § 2D1.1 cmt. n.27(C).

The U.S. Sentencing Guidelines use drug purity as a proxy for a defendant's culpability. According to the Guidelines, "the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." U.S.S.G. § 2D1.1 cmt. n.27(C). As a result, the Guidelines distinguish between "methamphetamine mixture" and "actual methamphetamine." *Id.* § 2D1.1(c). Generally, defendants caught with actual methamphetamine face longer sentences under the guidelines than defendants caught with methamphetamine mixture. *Id.*

The factual distinction between "methamphetamine mixture" and "actual methamphetamine" is not overly significant for Thomas because he was found to have possessed 100% pure, actual methamphetamine. [27], p. 5. Still, Thomas challenges the fairness of his sentence arguing that he had a base offense level of "30" per the sentencing guidelines utilizing

the current purity level of methamphetamine.[2] [42], pps. 3-4. Thomas further argues that if he were deemed to have possessed a "mixture" of methamphetamine, his base offense level would be "26."[3] *Id.* The presentencing report stated that "laboratory analysis of the suspected methamphetamine confirmed the presence of methamphetamine hydrochloride with a net weight of 55.3 grams, and a purity level of 100%." [27], p. 5. Additionally, Agent Jack Cockrum was called as a witness for the Government regarding drug purity levels. And he gave testimony on the purity level of the methamphetamine and stated that its purity level was 100% pure. [36], pps. 16-18. Moreover, laboratory testing revealed that the methamphetamine that Thomas possessed was 100% pure. *Id.* Thomas submits no authority showing that a court has considered a similar argument and ruled that a finding of 100% purity in methamphetamine from a laboratory report was considered a "mixture" for reducing the base offense level for sentencing.

Instead, Thomas asks this Court to reduce his sentence because the sentencing guidelines use drug purity as a proxy for culpability, and he argues that the Court instead should "examine all of the circumstances of the defendant's case and file, seeing the defendant as a 'whole person.'" *Concepcion v. United States*, 597 U.S. 481, 491, 142 S. Ct. 2389, 2398, 213 L. Ed. 2d 731 (2022) ("Federal courts historically have exercised this broad discretion to consider all relevant

---

[2] An offense involving at least 50 grams, but less than 150 grams of methamphetamine (actual) has a base offense level of 30, pursuant to U.S.S.G. § 2D1.1(c)(5). [27], p. 5. But certain adjustments can be made to either enhance or reduce the sentence of the offense. Here, Thomas received the correct base offense level of 30 because he was found to have possessed 55.3 grams of pure, actual methamphetamine. Still after calculations, Thomas received a two-level enhancement for importation of methamphetamine, and a three-level downward adjustment for acceptance of responsibility, making his total offense level a 29. [27], p. 26.

[3] At the sentencing hearing, Thomas had three objections. [36], pps. 3-4. First, he objected to the base offense level of 30 on the grounds that the DEA lab report does not identify the type of methamphetamine. *Id.* Specifically, Thomas set forth how there are two types of methamphetamines, D-meth, and L-meth, and he asserted in the objections that there is a distinction that matters when calculating the base offense level. *Id.* Second, Thomas objected to whether the two-level sentencing enhancement should apply in terms of whether the methamphetamine at issue was imported into the United States. *Id.* Lastly, Thomas objected to the criminal history category of a VI, and asserted that his criminal history category had been over-calculated and that he is a Category V. *Id.* After hearing the evidence and arguments of counsel, all three objections were overruled. *Id.* at pps. 13-15, 21-23.

information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them. That discretion also carries forward to later proceedings that may modify an original sentence."). Thomas relies on *United States v. Robinson*, where the defendant argued that because the purity levels do not indicate a defendant's culpability, the court should not rely on the purity level distinction in the Guidelines. *United States v. Robinson*, No. 3:21-cr-14, 2022 WL 17904534, at *1 (S.D. Miss. Dec. 23, 2022). Ultimately, that court agreed and concluded that culpability should not be directly linked to purity for that particular case, and instead the focus should be on examining all the circumstances of the defendant's case as instructed in *Concepcion* and granted the defendant's motion. *Id.* at *3; *Concepcion v. United States*, 597 U.S. 481, 142 S. Ct. 2389, 213 L. Ed. 2d 731 (2022).

But this Court did consider all relevant circumstances to see Thomas as a "whole person" before rendering a sentence. *Concepcion*, 597 U.S. at 491. During the sentencing hearing, the Court noted that Thomas had submitted a sentencing memorandum and a request for downward variance. [36], p. 3. The Court also recognized that Thomas had submitted various letters of support, which it had reviewed. *Id.* Moreover, the Court heard Thomas's three objections to the presentencing report where the Government had to meet its burden and show why, on the merits, the objections should be overruled. After extensively reviewing the case, the Court walked through its findings and articulated them clearly on the record. [36]. In considering all aggravating and mitigating factors, and the requirements of the sentencing guidelines based on the evidence and arguments presented, the Court sentenced Thomas to 152 months of imprisonment.

The Government argues that aside from waiving his right to pursue post-conviction relief, Thomas has not shown that, under Section 3582(c)(2), his sentencing range "has subsequently been lowered by the Sentencing Commission." [47], p. 2. The record supports this fact, and

Thomas has provided no authority showing that the Sentencing Commission has lowered the

sentencing range for this crime. Instead, Thomas seeks to make an argument based on the purity

of the methamphetamine, an argument already largely considered at the sentencing hearing.

Even still, this Court is not bound by *United States v. Robinson*, on which Thomas's

argument heavily relies. Just as the Court has the discretion to disagree with the sentencing

guidelines related to methamphetamine and impose a non-guideline sentence after considering the

whole person in light of the appropriate Section 3553 factors, it can also choose not to vary from

the guidelines just as many other courts have done.[4]

But even if this Court did follow the reasoning set out in *Robinson*, doing so would not

equate to a non-guideline sentence for Thomas. That is mostly because, based on their criminal

histories, Thomas is distinctly different as a criminal defendant than the defendant in *Robinson*.[5]

The defendant in *Robinson*, based on his presentencing report, had a criminal history score of zero

thereby establishing a criminal history category of I. *United States v. Robinson*, No. 3:21-cr-14 (S.D.

---

[4] *United States v. Hanks*, No. 1:16-cr-17, 2023 WL 6133441, at *3-4 (S.D. Miss. Sep. 19, 2023) (recognizing that a district court is not bound by the holding of another district court in the same district, and that policy disagreements concerning the distinction between "actual" and "mixture" methamphetamine is better addressed at the sentencing); *United States v. Bradley*, No. 1:17-cr-9, 2024 WL 625313, at *1-2 (S.D. Miss. Feb. 14, 2024) (finding that *Robinson* was not an intervening change of law since *Robinson* is a district court case that is not binding on another district court); *United States v. Flores*, No. CR 5:15-050, 2024 WL 1979277, at *2 (E.D. Ky. Apr. 26, 2024) (finding that when a defendant files a motion retroactively to reduce their sentence by arguing the significance of purity in methamphetamines cases, the court does not abuse its discretion by following the sentencing guidelines); *United States v. Lopez-Martinez*, No. 8:19-cr-407, 2023 WL 2633352, at *2 (D. Neb. Mar. 24, 2023) (finding that when a defendant files a motion to reduce sentence arguing the distinction of the purity of methamphetamines, the distinction in the sentencing guidelines is not an extraordinary and compelling reason to reduce the defendant's sentence); *United States v. Van Doan*, No. 14-cr-225, 2023 WL 6998179, at *1-3 (S.D. Cal. Oct. 23, 2023) (finding that a motion to reduce sentence in which a defendant argues methamphetamine-type distinction is not an extraordinary and compelling reason to reduce a defendant's sentence).

[5] "The [U.S. Sentencing Guidelines] assign each offender to one of six criminal history categories based upon the extent of an offender's past misconduct. Criminal History Category I is the least serious category and includes many first-time offenders. Criminal History Category VI is the most serious category and includes offenders with serious criminal records." U.S. Sent'g. Comm'n, *An Overview of the Federal Sentencing Guidelines*, https://www.ussc.gov/sites/default/files/pdf/about/overview/Overview_Federal_Sentencing_Guidelines.pdf (last visited Aug. 6, 2024).

Miss. Dec. 23, 2022) (Dkt. No. 112). But Thomas had a criminal history score of fifteen, establishing a criminal history category of VI. [27], p. 16. There is no higher category. This is the category reserved for offenders with serious criminal records. And his criminal record reflects this. To be sure, he has over twenty criminal convictions—some for serious offenses, such as federal mail fraud. [36], p. 37; [27], pps. 8-21. Also, he did not even receive any criminal history points for some of his convictions because of the age of the convictions or for other reasons. *Id.* As an example, he has four different convictions for domestic violence for which he received no criminal history points. *Id.* Not to mention he has well over a dozen additional arrests or charges for which the charges were either dismissed, not true billed, remain pending, or the disposition is unknown. *Id.*

Ultimately, this Court found that a downward variance would be inappropriate in Thomas's case because of his criminal history and because of the Section 3553 factors. [36], p. 36. The Court stated to Thomas during the hearing, "[s]o you've had opportunities, you have been in the court system, you have been through the justice system, and yet you have not learned." [36], p. 37. The Court added that ". . . based off of your criminal history, it is inappropriate for me to vary downward because you have not learned to date. In fact, you were on supervised release . . . related to a criminal conviction in this very court in front of another judge, and yet you were still distributing methamphetamine." *Id.* So even if this Court did follow the reasoning in *Robinson*, Thomas, and the defendant in *Robinson* are starkly different as criminal defendants.

For all of these reasons, Thomas has not shown an "extraordinary and compelling" reason, consistent with the Sentencing Commission's policy statement, that justifies a sentence reduction.

**ii. 18 U.S.C. § 3553(a) factors**

Even if Thomas had established extraordinary and compelling reasons, the Court may still deny a reduction in sentence or compassionate release where the Section 3553(a) factors weigh against such relief. *See United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022). In reviewing 18 U.S.C. § 3553(a), the Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1); *United States v. Rollins*, 53 F.4th 353, 356 (5th Cir. 2022) (citing to presentence investigation report). The Court must also consider the kind of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of the defendant as set forth in the guidelines issued by the Sentencing Commission; and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(3), (4), (6). The Court must further consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, deter other criminals, and protect the public. 18 U.S.C. § 3553(a)(2)(A)-(C).

As discussed previously in this Opinion, Thomas's history and characteristics, and the need to protect the public from future crimes by Thomas, weigh heavily against a reduction in his sentence. Indeed, Thomas has a lengthy criminal history—including multiple convictions for possession of controlled substances, multiple convictions for domestic violence, as well as possession of a schedule III, IV, V substance, and mail fraud. [27], pps. 7-16.

Thomas pleaded guilty to the single count indictment for possession with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). He was sentenced on October 28, 2021. At the time of sentencing, Thomas had a total offense level of 29

and a criminal history category of VI, which resulted in a total guideline range of 151-188 months

imprisonment. Accordingly, Thomas was sentenced to 152 months imprisonment. At sentencing,

this Court determined that a term of 152 months imprisonment reflected the seriousness of the

crime, promotes respect for the law, and provides just punishment for the offense. Also, the

sentence imposed avoided unwarranted sentencing disparities among similarly situated

defendants. Given the nature of the offense, this Court further concluded that the sentence

imposed would deter criminal conduct, protect the public from future crimes committed by

Thomas, and would promote rehabilitation. Today, this Court makes the same determination.

In June of 2024, the United States Sentencing Commission released a publication entitled

"Methamphetamine Trafficking Offenses in the Federal Criminal Justice System." In it, the

Sentencing Commission points out the increasing dangers of methamphetamine trafficking in this

country. In considering the seriousness of Thomas's offense, this Court finds it appropriate to

draw attention to the dangers of methamphetamine trafficking referenced in the publication.

> Over the last 30 years methamphetamine has evolved from a 'small problem
> confined primarily to several western states' to the most prevalent drug in the
> federal criminal justice system. Congressional action in the late 1990s and early
> 2000s aimed to slow the spread of methamphetamine trafficking by limiting licit
> access to precursor chemicals and increasing penalties. While domestic
> methamphetamine production waned in the years following this legislation,
> Mexican Transnational Criminal Organizations (TCOs) began producing highly
> pure methamphetamine on an industrial scale and exporting it to the United States.
> By fiscal year 2022, methamphetamine offenses accounted for approximately one-
> half of all drug trafficking offenses sentenced federally.[6]
>
> . . .
>
> Methamphetamine is a Schedule II stimulant under the Controlled Substances Act
> (or "CSA"). It is one of a class of mostly synthetic substances called amphetamine-

---

[6] United States Sentencing Commission, Methamphetamine Trafficking Offenses in the Federal Criminal
Justice System, June 2024, PDF p. 6; publication pagination p. 2, www.ussc.gov/sites/default/files/pdf/research-and-
publications/research-publications/2024/202406_Methamphetamine.pdf

type stimulants that increase activity in the central nervous system when ingested orally, snorted, injected, or smoked. Methamphetamine triggers the release of the monoamine neurotransmitters dopamine, serotonin, and norepinephrine that overwhelm the pleasure center of the brain and provide a sensation of euphoria, or a 'high,' which can affect the user for up to 15 hours. Methamphetamine also blocks the re-uptake of dopamine, which contributes to a higher concentration of dopamine and the addictiveness of the drug.

In addition to the feeling of euphoria, methamphetamine can cause both short and long-term adverse effects. As a Schedule II controlled substance, methamphetamine has a 'high potential for abuse and the potential to create severe psychological and/or physical dependence.' Methamphetamine may result in tachycardia (i.e., rapid heartbeat), hypertension (i.e., high blood pressure), anxiety or agitation, and even death. Long-term use of methamphetamine can cause damage to the brain and permanent neurological damage, manifesting in paranoia, violent behavior, insomnia, and hallucinations. Taken in large doses, methamphetamine may result in an overdose death from stroke, heart attack, or organ failure caused by overheating.

According to data from the Centers for Disease Control and Prevention (CDC) overdose deaths from psychostimulants, comprised mostly of methamphetamine, increased 703 percent from 2011 to 2021 (Figure 1).

Figure 1. Overdose Deaths Involving Psychostimulants (Primarily Methamphetamine), 1999–2021:[7]

---

[7] *Id.* at PDF p. 10; publication pagination p. 6.



. . .

According to the DEA, the average potency of methamphetamine trafficked in the United States in the first half of 2019 was 97.5 percent. This represents a roughly 30 percent increase in the average potency of trafficked methamphetamine since 2011 []. The high potency of methamphetamine currently being trafficked means that smaller quantities are required to achieve the drug's desired effect.[8]

. . .

As domestic production of methamphetamine decreased in the early 2000s, Mexican Transcontinental Criminal Organizations (TCOs) ramped up importation of higher quality, lower cost methamphetamine produced on an industrial scale []. Methamphetamine production shifted to Mexico as precursor chemicals became highly regulated in the United States.  Mexican TCOs found ways to bypass these restrictions by either using uncontrolled precursor chemicals or clandestinely importing or producing controlled precursors. Today, most of the methamphetamine sold in the United States is produced in large laboratories in Mexico, which the DEA calls 'super laboratories,' capable of producing multiple kilogram quantities of highly pure methamphetamine which is then shipped across the border. Once in the United States, Mexican criminal organizations also control

---

[8] *Id.* at PDF p. 13; publication pagination p. 9.

most of the wholesale distribution of methamphetamine and largely control domestic retail distribution.

This shift in production is evidenced by the growing quantity of methamphetamine seizures at the border []. As domestic production of methamphetamine decreased, methamphetamine seizures along the southwest border increased precipitously. In fiscal year 2013, U.S. Customs and Border Protection (CBP) seized just under 11,000 pounds of methamphetamine. In fiscal year 2023, CBP seized more than ten times that amount, recovering 140,000 pounds of methamphetamine at the southwest border.

The majority of methamphetamine entering the United States is smuggled across the southwestern border through various means, including human couriers, parcel services, and commercial trucking. Large quantities of methamphetamine are trafficked in fuel tanks carrying liquid methamphetamine. Couriers import kilo-sized quantities, often concealing the methamphetamine in tires or the doors of vehicles. Couriers will conceal smaller parcels of methamphetamine in or on their persons when crossing the southwest border into the United States.[9]

. . .

Methamphetamine is a 'synthetic' drug manufactured using chemicals or 'precursors,' such as acetone, anhydrous ammonia (fertilizer), ether, red phosphorus, and lithium. Most methamphetamine precursors are tightly controlled because they are hazardous materials in addition to their use in illicit drug manufacturing.[10]

As evidenced by the information collected by the Sentencing Commission, methamphetamine offenses are extremely serious and the threat to the health and safety of the community is not improving. A reduction in sentence would not reflect the seriousness of Thomas's methamphetamine offense, and would not promote respect for the law, provide just punishment for the offense, nor deter criminal conduct. Accordingly, the Court finds that a sentence reduction would be inconsistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). For these reasons, Thomas's Motion to Reduce Sentence [42] is denied.

---

[9] *Id.* at PDF pps. 15-16; publication pagination pps. 11-12.

[10] *Id.* at PDF p. 19; publication pagination p. 15.

**B. Motion to Vacate under 28 U.S.C. § 2255 on Claims of Ineffective Assistance of Counsel**

To obtain post-conviction relief under 28 U.S.C. § 2255, a petitioner attacking his conviction or sentence must prove by a preponderance of the evidence that his sentence was imposed in violation of the United States Constitution or laws, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). The United States Supreme Court has emphasized that a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). After a defendant has been convicted and exhausted or waived any right to appeal, "a court is entitled to presume that [he] stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Once a sentence of imprisonment has been imposed, the Court's authority to reduce or modify the sentence is limited. *United States v. Lopez*, 26 F.3d 512, 515 (5th Cir. 1994).

In his Motion, Thomas identifies two grounds for relief based on ineffective assistance of counsel. Before addressing these claims, however, the Court must first discuss the effect that Thomas's plea agreement has on the claims identified in his Motion.

**i. Waiver**

In his plea agreement, Thomas waived his right "to contest the conviction and sentence or the manner in which the sentence was imposed in any post-conviction proceeding." [27], p. 3. The Fifth Circuit has held that absent coercion or other disparities, a defendant's waiver of his statutory right to collaterally challenge his conviction and sentence is generally enforceable if the waiver was both knowing and voluntary. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (enforcing voluntary and knowing waiver of Section 2255 motion); *United States v. White*, 307 F.3d 336, 344

(5th Cir. 2002). "A waiver is knowing and voluntary if the defendant knows that he has the right to collateral review and that he is waiving it in the plea agreement." *United States v. Barnes*, 953 F.3d 383, 386 (5th Cir. 2020) (citation omitted).

Here, the plea agreement and the applicable waiver provision was reviewed with Thomas at his change of plea hearing. [35], pps. 16-22. The Court specifically asked Thomas at his change of plea hearing if anyone in anyway forced him to plead guilty, and Thomas answered, "[n]o, Your Honor." [35], p. 17. Thomas was also asked if he was "pleading guilty of [his] own free will because [he is] guilty?" *Id.* Thomas answered, "[y]es, Your Honor, I am." *Id.* The Court then accepted the plea and found Thomas guilty of the offense. *Id.* Because Thomas testified under oath that his guilty plea was made voluntarily and without coercion or force, it holds true that Thomas knowingly and voluntarily entered into the plea agreement. [35], p. 17; [36], p. 33. Thus, pursuant to the waiver provision in the plea agreement, Thomas has waived his right to collaterally challenge his conviction for all claims listed in his Motion, except those for ineffective assistance of counsel. [36], p. 33; *Wilkes*, 20 F.3d at 653 (finding that while relief may be waived in a plea agreement, "[s]uch a waiver may not always apply to collateral attack based on ineffective assistance of counsel").

### ii. Ineffective assistance of counsel

Thomas raises two claims of ineffective assistance of counsel which are assessed under a two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). That is, a petitioner must show (1) deficient performance, in that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's ineffective assistance was prejudicial to his defense. *Strickland*, 466 U.S. at 687-88; *United States v. Valdez*, 973 F.3d 396, 402 (5th Cir. 2020). The Fifth Circuit has held that "[a] voluntary guilty plea waives

all non[-]jurisdictional defects in the proceedings against the defendant . . . This includes all ineffective assistance of counsel claims expect insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019).

Thomas's first claim of ineffective assistance of counsel states that he was denied effective assistance of counsel when his attorney failed to object at sentencing to "the DEA case agents' testimony regarding the purity of methamphetamine." [49]; [52], p. 3. Second, Thomas claims that he was denied effective assistance of counsel when his attorney failed to "argue that there is no empirical bases [sic] for the Sentencing Commission's ten to one disparity between actual methamphetamine and methamphetamine mixture." [49]; [52], p. 6.

### a. Witness testimony

Thomas argues that his attorney was ineffective because he failed to object to the DEA case agent's testimony as inadmissible at sentencing because the agent was not qualified to testify as an expert. But Thomas's argument fails because the Federal Rules of Evidence do not apply at sentencing. FED. R. EVID. 1101(d)(3). And an attorney cannot be deemed ineffective for failing to make futile or unmeritorious objections. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir. 2005) (counsel not ineffective for failing to lodge what would likely have been a futile objection).

But even if Thomas's attorney had objected to the DEA case agent's qualifications, and even if this Court would have sustained such an objection requesting more of a foundation, it is evident that any satisfactory additional foundation could be made based on the line of questions.

And this Court is aware that Agent Cockrum has testified on numerous occasions just in the Southern District of Mississippi. He is an experienced agent who testifies fairly regularly. Therefore, Thomas's first ineffective assistance of counsel claim lacks merit.

### b. Purity

As for Thomas's second claim, he contends that his attorney failed to object to the sentencing issues regarding the purity of the methamphetamine and its importance.[11] But at the sentencing hearing, Thomas's attorney *did* raise such an objection along with a supporting memorandum and a request for a downward variance. [27]; [36], pps. 3-4. Additionally, Thomas's attorney responded to the claims of ineffective assistance of counsel and noted that he and Thomas had many conversations including, that based on the evidence, Thomas would be convicted at trial based on the evidence. Once the plea agreement came, his attorney explained the rights Thomas would be giving up if he were to sign. His attorney also filed an appeal on Thomas's instruction, which was denied as frivolous. [39]. Accordingly, based on the analysis above, Thomas's ineffective assistance of counsel claims are baseless. But even if not, Thomas would have received the same sentence for all of the reasons previously identified.

## C. Evidentiary hearing

A motion to vacate filed under 28 U.S.C. § 2255 does not "automatically mandate a hearing." *United States v. Hughes*, 635 F.2d 449 (5th Cir. 1981). A hearing is not required if "(1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *United States v. Palacios*, 928 F.3d 450 (5th Cir. 2019). Further, this issue is reviewed for abuse of

---

[11] Thomas was sentenced on October 28, 2021, and *Robinson* was handed down on December 23, 2022—over a year later. Even still, Thomas's attorney made very similar arguments to the issues raised in *Robinson*.

discretion and, if a hearing is denied, Thomas can only prevail if he presents "independent indicia of the likely merit of [his] allegations." *See United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008). Because Thomas has failed to produce any independent indicia of the likely merit of his allegations, as discussed fully above, he is not entitled to an evidentiary hearing. The record in this case is adequate to dispose fully and fairly of Thomas's Motion.

To ensure Thomas is not entitled to an evidentiary hearing regarding his Section 2255 motion, however, this Court distinguishes a recent unpublished Fifth Circuit opinion where the court remanded a case after finding that the defendant was entitled to an evidentiary hearing on his Section 2255 motion based on a claim of ineffective assistance of counsel. *United States v. Griffin*, No. 22-60453, 2024 WL 3174503, *3-4 (5th Cir. June 25, 2024). In *Griffin*, the defendant was indicted on drug-trafficking charges and entered into a plea agreement with the assistance of counsel. *Id.* at *1. He was sentenced as a career offender to a 262-month imprisonment term—the lower 25 percent of the Guideline range. *Id.* He subsequently filed a Section 2255 motion alleging that he received ineffective assistance of counsel. The defendant argued that his counsel *did not advise him* that he would be subject *to the career-offender enhancement* at sentencing and that he therefore could not make an informed decision about whether to plead guilty. *Id.* at *2. The Fifth Circuit found that taking the defendant's allegations as true, his counsel's advice arguably tainted the desirability of his plea agreement, and the defendant's ineffective assistance of counsel claim potentially had merit. *Id.* at *4. The case was remanded to district court. *Id.*

But *Griffin* is starkly different from what Thomas presents here. Not only does Thomas not argue that he was ill-advised by his counsel, he states simply the objections his Counsel should have made, regarding the culpability surrounding actual methamphetamine and a mixture. Counsel did make similar objections at the sentencing hearing. [36]. Thomas also does not submit a

declaration detailing how any advice from his counsel, or lack thereof, caused him to be uninformed when he pled guilty. And Thomas's counsel submitted a detailed response to Thomas's ineffective assistance of counsel claims, explaining all that he did to assist Thomas in his defense. This is not a scenario where a defendant may not have fully understood his likelihood of being found to be a career offender and the consequences that flow from that. Thomas's case is quite different from *Griffin*. *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (a Section 2255 motion "can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief."); *Griffin*, 2024 WL 3174503, at *3 ("In determining what the motions, files, and records show, [the] court may consider the defendant's affidavit as to what his counsel advised him") (citing *United States v. Reed*, 719 F.3d 369, 374 (5th Cir. 2013)).

Because Thomas has not presented any evidence justifying a hearing, and because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," an evidentiary hearing is not warranted. 28 U.S.C. § 2255(b).

### III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Thomas's Motion [42] to Reduce his Sentence under the First Step Act, and his Motion [49] to Vacate under 28 U.S.C. § 2255 are DENIED.

This, the 13th day of December, 2024.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE